CASE 50—ACTION BY THE UNITED LOAN & DEPOSIT BANK OF CAMPBELLSVILLE AGAINST PETER BITZER AND OTHERS TO ENFORCE A MORTGAGE LIEN.—JAN. 27.

# United Loan & Dep. Bank of Campbellsville v. Bitzer, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANT, BITZER, AND PLAINTIFF APPEALS.  REVERSED.

MUNICIPAL CORPORATIONS—IMPROVEMENT WARRANTS—LIEN CREATED —WITNESSES— COMPETENCY— TRANSACTION WITH DECEDENTS— CONFLICTING LIENS.

Held:    1. Under the express provisions of Code, section 606, one can not testify for himself as to transactions with a person deceased at the time the testimony is offered.
2. Where a contractor, pursuant to agreement with his surety to secure him for advances made, assigned him apportionment warrants which were drawn in favor of himself against his own property, as such warrants created no obligation in his own favor, the assignment of them gave the surety no lien which he could enforce against a mortgage executed by the contractor.

United Loan & Dep. Bank of Campbellsville v. Bitzer, &c.

WALLACE & MILLER, AND CARROLL & CARROLL, FOR AP-
PELLANT.

## POINTS AND AUTHORITIES.

1. An apportionment warrant in favor of M. Gleason against
M. Gleason, and which gives M. Gleason a lien against the
property of M. Gleason, is a nullity, since a person can not
owe himself and can not have a lien in his own favor against
his own property to secure a debt owing from himself to him-
self. Rapalje and Lawrence Law Dictionary, under head of
"Liens;" Allin, &c. v. Shadburn, 1 Dana, 68; Morrison v.
Stockwell, 9 Dana, 172; Debard v. Crow, 7 J. J. Mar., 7; Muh-
ling v. Sattler, 3 Met., 285; Lytle v. Lytle, 2 Met., 128; Hicks
v. Doty, 4 Bush, 422; Civil Code, sec. 18; Kentucky Statutes,
sec. 474; Thomas v. Thomas, 3 Litt., 9 Saunders v. Saunders,
2 Litt., 32.

2. Since Gleason could not have enforced these warrants
against his own land, and especially as against his prior mort-
gage to appellant, neither can Bitzer, it matters not whether
he holds the warrant as contract assignee or by subrogation as
surety. United States v. Buford, 3 Peters, 30; Am. & Eng.
Ency. of Law (2d. ed.), vol. 2, p. 1079; Am. & Eng. Ency.
of Law (1st ed.), vol. 24, p. 192.

3. These warrants having come rightfully into Gleason's pos-
session, and he being the person primarily liable for their
payment, they were paid and merged into the fee, and his sub-
sequent assignment of them to Bitzer could not revive them.
Logan County Natl. Bank v. Barclay, 104 Ky., 97; Long v. Bank
of Cynthiana, 1 Litt., 290; Pomeroy's Equity Jurisprudence, sec.
797.

4. The agreement by Gleason to pay Bitzer in warrants, no
particular warrants being designated, and it being in Gleason's
power to select the warrants, did not amount to an equitable
assignment, and therefore, there was no equity at the time these
warrants came into Gleason's hands to prevent a merger. Christ-
mas v. Russell, 14 Wal., 69; Dillon v. Barnard, 21 Wal., 430;
A. & Eng. Ency. of Law (2d ed.), vol. 2, p. 1068; Marshall v.
Strange, 10 Ky. Law Rep., 410.

5. But conceding that Bitzer possessed an equity, his equity
is subsequent in time, and therefore inferior in right to appel-
lant's mortgage. Forepaugh v. Appold, 17 B. Mon., 625; Swei-
gert v. Bank of Kentucky, 17 B. Mon., 290. Especially is this
true of a surety who seeks subrogation. This remedy will not
be enforced in his favor, so as to defeat an interest acquired and
held by a third party, when that interest, *though* subordinate

United Loan & Dep. Bank of Campbellsville v. Bitzer, &c.

to that of the creditor, is prior in date to the surety's undertaking. Farmers' & Drovers' Bank v. Sherley, 12 Bush, 304; Fishback v. Bodeman, 14 Bush, 117; Am. & Eng. Ency. of Law (1st ed.), vol. 24, p. 199.

"In a contest between equities, seniority prevails and notice is immaterial." Stephens v. Benton, 1 Duv., 116; Hunt v. Sturdevant, 4 B. Mon., 464; Carlisle v. Jumper, 81 Ky., 282.

ALFRED SELLIGMAN, for PETER BITZER.

### POINTS MADE AND AUTHORITIES CITED.

1. Michael Gleason owned a parcel of land on the east side of Floyd street, in Louisville, Kentucky, and within the territory subject to assessment for original improvements under the ordinance passed by the legislative authority of the city of Louisville for the construction of Floyd street.

2. This parcel of land at the same time was subject (1) to unpaid taxes, State, county and city, (2), a vendor's lien in favor of Temple Bodley, (3) a mortgage to George Everbach, and (4) a mortgage to John I. Callaway to indemnify him for $2,000 which he had paid as surety for Gleason. This is the claim now owned by the appellant, the United Loan & Deposit Bank.

3. When the bids for the improvement of Floyd street were received under the above ordinance, Gleason was awarded the contract and entered into a contract in writing with the city of Louisville for its due performance, with Peter Bitzer as his surety. Gleason failed to do any part of the work, and Bitzer as surety furnished the materials and labor necessary for and did complete the improvement.

4. The warrants or assessments on the property subject to lien were necessarily issued in the name of the original contractor, Gleason, but instantly assigned and transferred in writing to the real contractor, Peter Bitzer.

5. Michael Gleason never had any beneficial interest in these warrants and was the mere vehicle to pass them to the man who had furnished the materials and done the work.

6. The appellants contend that Bitzer had no lien on the land of Michael Gleason for the amount of the apportionment against his property, because Gleason was the contractor and the lien could not be raised on his own behalf against his own property and be superior to prior mortgages; that Bitzer being the mere assignee of the street warrant, his rights could not rise higher than his assignor's.

7. This contention can not be maintained, because *Gleason* did not do any of the work. It was all performed by Bitzer, who was bound directly to the city of Louisville for the completion of the work.

8. It is conclusively presumed that this improvement was a benefit to the property and the cost thereof is represented by the price which it brought at the sale.

9. The city of Louisville had an interest in this work being done and Peter Bitzer was bound to do the work, when Michael Gleason failed. It would be unjust to deprive him of the lien which would have existed in favor of any other contractor except Gleason himself. Gleason could not compel Bitzer to improve his property and deny him payment, and since the mortgagees are conclusively presumed to have received the benefit of the work, and under the law have a lien inferior to that of street improvements, the mortgagee stands precisely in the same position that Gleason must stand toward Bitzer. The lien being valid against Gleason, it follows that it is valid against the United Loan & Deposit Bank and all mortgagees. Roe & Lyon v. Scanlan & Co., 98 Ky., 25; Noonan v. Hastings, 19 Ky. Law Rep., 485; Prairie State Bank v. United States, 164 U. S., 232; First Natl. Bank v. City Trust Co., 114 Fed. Rep., 529.

10. There is no question of subrogation involved on this appeal.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On July 18, 1892, Micheal Gleason executed to John I. Calloway his note for $2,000, and a mortgage to secure it on some lots on Floyd street, in the city of Louisville. The note and mortgage were assigned by Calloway to appellant, the United Loan & Deposit Bank, who filed this suit to enforce its lien. Peter Bitzer was made a defendant to the action, and set up the fact that Michael Gleason in the year 1893 made a contract with the city of Louisville for the improvement of Floyd street between the center line of Magnolia avenue and the center line of Burnett avenue; that, upon the execution of this contract, Gleason desired to borrow money from Bitzer to purchase the necessary materials and to pay for the work required in the construc-

tion of the improvement as provided by his contract; that, with the express agreement between him and Gleason that Gleason should assign over to him the contract with the city, and all the warrants to be received thereunder, Bitzer advanced to Gleason, in money, the full value of the contract, and all of the warrants to be received thereunder, and Gleason assigned to Bitzer all his rights under the contract, and all money and warrants to be received thereunder, of all which the city of Louisville had due notice; that, under Bitzer's supervision, and by his direction, and with his means and money, the improvement was made; that Bitzer paid with his own means for all of the material used in, and the work done on the improvement; that Gleason did not furnish any of the material, or pay for any of the material or work, but the improvement was wholly constructed by Bitzer, and at his expense; that three warrants were issued by the city for the cost of the improvements, which was chargeable to Gleason's property, and these warrants were issued to Bitzer.    On these facts Bitzer claimed a lien on the land for the amount of the warrants.    A demurrer having been sustained to this pleading, Bitzer filed an amended pleading, in which he alleged that the improvement in front of the property of Gleason enhanced its value to the extent of its cost.    The court thereupon overruled the demurrer to the answer as amended, and, the case being submitted for final hearing, entered judgment giving Bitzer preference over the mortgage executed to Calloway, and from this judgment the bank appeals.

We need not consider whether the allegations of the answer as amended were sufficient to entitle Bitzer to precedence over the mortgage.    The allegations of the answer were aptly denied by a reply, and the only proof taken to sustain the allegations of the answer is the deposition

of Bitzer himself, and the deposition of his clerk, Wilkes. Exceptions were filed to the evidence of Bitzer on the ground that, Gleason being dead, he could not testify for himself as to any transaction between him and Gleason. This exception was well taken.     The testimony of Bitzer as to transactions between him and Gleason. who is dead, can not be considered, for he can not testify for himself, under section 606 of the Code, as to a transaction with the decedent.     Turner v. Mitchell (22 R., 1784) 61 S. W., 468; Trail v. Turner (22 R., 100) 56 S. W., 645; Murray v. East End Improvement Company (22 R., 1477) 60 S. W., 648.     Wilkes states that he kept books for Bitzer; that Bitzer was the surety of Gleason in the contract; that Bitzer furnished groceries and money to Gleason to do the work with, commencing in the first of April, 1893; that they were furnished under the agreement that Bitzer was to have an apportionment warrant for enough to cover the amount advanced, the arrangement having been made before the work was done or the advances made.     He filed with his deposition an itemized account, running from April 11, 1893, to August 31st and footing up $1,766.64.     This, he says, is the correct account of the advances.     The entire amount of Gleason's contract was $6,012.92.     There were three warrants issued against the property of Gleason—one for $119.19, another for $1,631, and the third for $182.91. All of the other warrants, nineteen in number, appear to have been colected by Gleason or by E. F. Finley, his assignee. Only the three warrants against Gleason's own property appear to have come into the hands of Bitzer.     These were directed by the city to be issued to Gleason, and were indorsed by Gleason to E. F. Finley, and by Finley to Bitzer.     Each of them orders M. Gleason to pay to M. Gleason the amount therein specified for improving Floyd street from Burnett

to Magnolia avenue. The warrant of the city in favor of Gleason on himself must stand as a note where the same person is both the obligor and the obligee. When Gleason received the warrant from the city, directing himself to pay himself so much money, he, being both the payor and the payee of the paper, could not, by assigning it, vest any right of action in his assignee, or give him any lien on the land as against third parties. Thus, where a note has been paid off, which is secured by a lien on land, the obligor can not again put it out in circulation, and thus create a lien on the land as to third persons. If Gleason had continued to hold these warrants, he could not have set them up himself, as against the mortgage executed to Calloway, and Bitzer, as his assignee, is simply substituted to his rights. Allen v. Shadburne's Ex'r, 1 Dana, 68, 25 Am. Dec., 121; Morrison v. Stockwell, 9 Dana, 172; Muhling v. Sattler, 3 Metc., 285, 77 Am. Dec., 172; Logan County Bank v. Barclay, 104 Ky., 97, 20 R., 773, 46 S. W., 675. It is true, Bitzer was Gleason's surety in the contract, and he made advances to him upon the promise of an apportionment warrant. His account seems to consist, in the main, of merchandise to the hands, or feed, and ran along from day to day in small amounts, from April to August. By furnishing this money to his principal, he stood in no different light than any other surety making advances to his principal in carrying out the contract. The fact that Gleason promised to assign him an apportionment warrant to secure him does not help him, when this promise was not carried out in the making of a valid assignment. This assignment by Gleason of the warrants payable to himself on himself was, as to third parties, in law, no assignment. There is nothing in the case to sustain the allegations of the answer that Bitzer,

as surety, took charge of the work, and performed the contract at his expense. The authorities relied on for appellee are therefore inapplicable, and we have the case simply of a debtor assigning to his creditor, for his security, a paper which, as to third parties, was unenforceable. Ryan v. Doyle, 79 Ky., 363. 2 R., 354; Thompson v. George, 86 Ky., 311, 9 R., 588, 5 S. W., 760.

We therefore conclude that, as to the mortgage executed by the decedent to Calloway, Bitzer has no lien on the land by reason of the apportionment warrant assigned to him by Finley.

The judgment is therefore reversed, with directions to enter a judgment in favor of the bank.